UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (DKT. 33)**

**I.    Introduction**

On April 18, 2018, Linda Safar ("Linda") and Younan Safar ("Younan")[1] (together, "Plaintiffs" or "Safars") initiated this action against Allstate Insurance Company ("Defendant," or "Allstate") in the Los Angeles Superior Court. Dkt. 1-1. Defendant removed the action on May 15, 2018, on the basis of diversity jurisdiction. Dkt. 1. The dispute presented concerns a claim by Plaintiffs under a homeowner's insurance and umbrella policy ("Policy") issued by Defendant. The claim arises from an alleged May 2015 burglary at Plaintiffs' home. The Complaint advances three causes of action: (i) breach of implied covenant of good faith and fair dealing; (ii) breach of contract; and (iii) negligence.

Following the close of discovery, Defendant filed a Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (("Motion") Dkt. 33), with supporting evidence and other submissions. Dkts. 33-1 to 33-32. Plaintiffs opposed the Motion (("Opposition") Dkt. 42), and also submitted supporting evidence and other submissions (Dkts. 42-1 to 42-12, 43) as well as objections to certain evidence proffered by Defendant. Dkt. 44. Defendant filed a reply (("Reply") Dkt. 46), which also included evidentiary objections (Dkt. 46-1) and other supporting materials. Dkt. 46-2.[2]

A hearing on the Motion was held on November 25, 2019, and it was taken under submission. For the reasons stated in this Order, the Motion is **GRANTED-IN-PART** as to the negligence claim and punitive damages claim, which are **DISMISSED WITH PREJUDICE**. The Motion is also **GRANTED** as to the claims by Plaintiffs that are based on the 57 items that were not described by the Safars with sufficient specificity.

---

[1] The use of first names to identify those with common surnames follows a common practice that is designed to facilitate the discussion in this Order. No disrespect is intended by the use of this common convention.
[2] These evidentiary objections are addressed in separate, contemporaneous orders. However, because one non-evidentiary argument raised in the objections (Dkt. 46-1 ¶ 10) is material to the analysis, it is addressed below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

**II.     Factual Background**

     A.     The Parties

Linda and Younan reside together in Los Angeles County, California. Dkt. 1-1 ¶¶ 1, 6-7. They have several children including Priscilla Safar ("Priscilla"), who played a key role in the insurance claims process that is discussed below.

Allstate is an insurance company incorporated in Ohio. *Id.* ¶ 8.

     B.     The Alleged Burglary and Corresponding Claims Process

The Safars contend that between May 22 and 25, 2015, while they were away from their home in Rancho Palos Verdes, it was burglarized. Plaintiffs' Response to Separate Statement of Uncontroverted Facts ("SUF Response"), Dkt. 42-11 ¶ 2. At this time, the home was covered by the Policy, which included two terms that are relevant here: Coverage A, which insured the dwelling, and Coverage C, which insured personal property. *See id.* ¶ 36; Dkt. 33-10 at 3.

The parties disagree as to whether the circumstances of the alleged burglary were suspicious. Allstate argues that the alleged burglary occurred under suspicious circumstances, raising concerns that it was by a person who had some relationship to Plaintiffs. The Plaintiffs argue that there was nothing suspicious about the burglary.

On June 24, 2015, Younan contacted Allstate to report the theft of approximately $1 million in cash. SUF Response ¶ 3. There is some dispute as to when the Plaintiffs first provided information to Allstate about personal property that they claimed was stolen. There are similar disputes as to when the Plaintiffs submitted partial lists of stolen items and proofs of purchase that Allstate had requested. *Id.* ¶¶ 4-6. However, it is undisputed that it was not until August 16, 2016 that the Safars sent Allstate a complete list of all claimed, stolen property ("List"), and that it identified 553 stolen and 21 damaged items, including 117 pairs of shoes and 151 handbags. *Id.* ¶¶ 7-8. The inventory list presented a total value of the items of $824,187.64. *Id.* ¶ 7.

Between August 30, 2016 and January 24, 2017, Allstate and its counsel corresponded with the Safars and their counsel to schedule examinations under oath ("EUOs") for each of the Safars. *Id.* ¶ 9. On February 17, 2017, Allstate denied the claim based on the Safars' non-cooperation as to their EUOs. *Id.* ¶ 10. However, Allstate and the Safars subsequently scheduled a time for the Safars' EUOs, and Allstate took the Safars' EUOs on March 29, 2017. *Id.* ¶ 11.

At an unspecified time, the Safars provided to Allstate photographs of a glass balcony door that was allegedly broken during the alleged burglary. *Id.* ¶¶ 16-17. Just before the alleged burglary, the Safars had Sergio Novoa ("Novoa") install a new deadbolt lock on the door. *Id.* ¶ 20. It is undisputed that during her EUO, Linda stated that she suspected that Novoa had broken into the home. *Id.* ¶ 21. Between May 5, 2017 and June 14, 2017, Allstate wrote to the Safars seven times to request Novoa's contact information, so that Allstate could examine Novoa. *Id.* ¶ 22. The parties dispute the precise relationship between the Safars and Novoa, including whether Novoa was an employee of a business owned by Younan, or someone the Safars employed to perform work in their home. *Id.* ¶ 23. However,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

it is undisputed that the Safars did not provide Novoa's contact information to Allstate. *Id.* ¶ 25. Allstate claims that if Allstate -- following an EUO -- had determined that Novoa committed a burglary, Allstate would have advanced claims for subrogation against Novoa. *Id.* ¶ 26.

On July 20, 2017, Allstate notified the Safars that Allstate would pay them $317,142.57, reflecting what Allstate considered to be the actual cash value of the items on the List that were described in sufficient detail. *Id.* ¶ 37. This amount was based on a calculation of the depreciation in value of the insured items. Thus, Allstate explained that the amount paid was because "[t]here is recoverable depreciation of $197,372.22 which means that the Safars may make [a] claim for the difference between the replacement costs and the actual cash value if they replace the items within one year from the date of payment as per the contract of insurance." *Id.* For 57 of the 574 items on the List, Allstate advised the Safars that it had assigned no cash value because, based on the descriptions submitted by the Safars, Allstate could not determine the items as to which claims were being made. *Id.*

On August 4, 2017, Allstate sent a check for $197,372.22 to Plaintiffs' counsel. *Id.*[3] After this check was sent, the Safars sought an appraisal under the Agreement, but Allstate denied the demand, claiming that "[it was] not aware of a dispute as to the amount of loss for any of the personal property." Dkt. 33-29 at 10. Also, between August 18, 2017 and November 11, 2017, Allstate made a written request to the Safars for further information about the aforementioned 57 items. It is undisputed that the Safars did not respond with any further information. *Id.* ¶ 41.

**III.     Analysis**

        A.     Whether Plaintiff Timely Served Responses to Defendant's Requests for Admission

The first issue is whether Safars served written responses to requests for admission that were served on February 12, 2019. Fed. R. Civ. P. 36(a)(3); Dkt. 46-2 at 40-57 (requests for admission and proofs of service). Counsel for Allstate declares that the Safars' responses were attached as an exhibit to the Opposition and identified as materials served on March 1, 2019 by regular postal mail. Dkt. 46-2 ¶ 5. However, counsel for Allstate also declares that these materials were never received by Allstate or its counsel. *Id.* Allstate's counsel also declares that, on March 22, 2019, he sent an e-mail to Plaintiffs' counsel stating that Allstate had not received any discovery responses, but that Plaintiffs' counsel did not respond. *Id.* He then declares that he asked Plaintiffs' counsel to provide the responses, as well as the proofs of service of the claimed prior responses, in their Microsoft Word format so that defense counsel could examine the metadata in those files and confirm that they were created on or before March 1, 2019. *Id.* ¶ 6. Defense counsel declares that Plaintiffs' counsel responded that the original Microsoft Word files had been deleted. *Id.*

Defense counsel argues that, in an *ex parte* application to extend the deadline to file the Opposition,

---

[3] Allstate's August 4, 2017 payment included $756.18 under Coverage A, which applied to the dwelling, to repair the glass balcony door. *Id.* ¶ 30. The Safars' claim was based on an estimate that included repairs for both the broken glass and subsequent damage associated with post-burglary water leaks through a window. *Id* ¶ 32. Allstate requested an opportunity to reinspect the property after learning about the repair amount, because the water damage could be categorized as a separate incident with a new deductible. *Id.* ¶ 33. It is undisputed that the Safars did not agree to this request, and that they have offered no basis on which they were permitted to do so under the Policy. *Id.* ¶ 34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

Plaintiff's counsel stated, "Plaintiffs' counsel has learned in reviewing the motion that Plaintiffs may need to file a separate Rule 36 motion to be safe, although Plaintiffs contend all discovery was timely responded to." Dkt. 38 at 3. Defense counsel argues that Plaintiffs' counsel would not have mentioned the possibility of a Fed. R. Civ. P. 36 motion, unless he believed that the Safars had not timely responded to the requests for admission.

"A proof of service is a sworn declaration giving rise to a presumption of receipt." *Seminiano v. Xyris Enter., Inc.*, 512 F. App'x. 735, 736 (9th Cir. 2013). Where a proof of service states that the service was by mail, the presumption may be rebutted by clear and convincing evidence that the service was not effected. *In re Bucknum*, 951 F.2d 204, 207 (9th Cir. 1991). Service by regular mail gives rise to a lesser presumption than service by certified mail. *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002).

The request for admissions raises a significant factual question that must be resolved with limited evidence. Plaintiffs' counsel provides certificates of service dated March 1, 2019, stating that the responses were sent to Allstate by regular postal mail. Defendant's counsel declares that he never received those responses, and that Plaintiffs' counsel did not respond to his March 22, 2019 e-mail.

Weighing the evidence, Allstate has not presented evidence sufficient to rebut the presumption established by the certificates of service. Although there is some circumstantial evidence that could provide some support for the position that Plaintiff's counsel never mailed the responses, this evidence does not meet the clear-and-convincing standard, nor the somewhat less rigorous standard that applies when service is by regular mail.[4]  That Plaintiff's counsel mentioned the possibility of a precautionary Fed. R. Civ. P. 36(b) motion does not affect the ultimate assessment of the evidence. This ruling is without prejudice to a later request by Allstate for other relief that may address any claimed harm.

    B.    Legal Standards

        1.    <u>Summary Judgment</u>

A motion for summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 324. Where the non-moving party will have the burden of proof on an issue, the movant need only demonstrate that there is an absence of evidence to support such claims. *Id*. If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed.

---

[4]  Defense counsel seeks to have an expert appointed by the Court to determine when Plaintiffs' responses to the requests for admission and the certificates of service were created. Dkt. 46-2 ¶ 6. This request is **DENIED**. The evidence presented does not warrant this unusual process or its associated cost given the issues presented.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

R. Civ. P. 56(c). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. *Id.* All inferences are to be drawn in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). This means that "where the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

A court is not required to assume that "general averments embrace the 'specific facts' needed to sustain the complaint." *Id.* "The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Id.* Thus, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of material fact and defeat summary judgment. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009); *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). "If the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998).

    2.    <u>Interpretation of Insurance Contracts</u>

The California Supreme Court has stated the rules for interpreting an insurance contract:

> Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract. The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation. A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. Moreover, insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer. As a coverage provision, an exception to an exclusion will be construed broadly in favor of the insured. This broad construction will aid the insured in meeting its burden of proof, thereby ensuring that the end result (coverage or noncoverage) conforms to the insured's objectively reasonable expectations.

*TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27-28 (2006) (internal citations, alterations and quotation marks removed).

Under California law, "whether there is . . . compliance with a condition precedent to a contract is a question of fact." *In re Sunset Bay Assocs.*, 944 F.2d 1503, 1516 (9th Cir. 1991) (quoting *Cline v. Yamaga*, 97 Cal. App. 3d 239, 248 (1979)); *see Hernandez & Nunez, Inc. v. Penn-Am. Ins. Co.*, No. CV 18-4192 AS, 2019 WL 1423770, at *7 (C.D. Cal. Feb. 15, 2019) ("What constitutes substantial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

compliance or substantial performance is a question of fact to be decided by the trier of fact." (quoting *Cline*, 97 Cal. App. 3d at 248)); CACI Jury Instruction 322 ("Occurrence of Agreed Condition Precedent"). Under California law whether an insured has met the obligations in an insurance policy is subject to a somewhat forgiving "substantial compliance" standard. *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 830 (9th Cir. 2000) (citing *Pimentel v. Conselho Supremo De Uniao Portugeuza Do Estado Da Cal.,* 6 Cal.2d 182, 188 (1936)). For example, if any noncompliance by the insured was "minor, and the insured complied with at least some of the specific requirements at issue" the standard is met. *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 432 (9th Cir. 2011) (reviewing cases). In contrast, "California courts have rejected substantial compliance arguments where the insured completely failed to comply with a warranty of condition." *Id.* (citing *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 1000 (2010); *S&M Lamp Co. v. Lumbermens Mut. Cas. Co.*, 199 Cal. App. 2d 446, 453 (1962), *as modified*).

Also significant is that, "[a]bsent a *factual* dispute as to the meaning of the policy language, interpretation, construction and application of an insurance contract is strictly an issue of law." *Mount Vernon Fire Ins. Co. v. Oxnard Hospitality Enter., Inc.*, 219 Cal. App. 4th 876, 880 (2013) (quoting *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 125 (1996)) (emphasis in original); *see also Merced Irr. Dist. v. Cnty. of Mariposa*, 941 F. Supp. 2d 1237, 1247 n.6 (E.D. Cal. 2013). Consequently, the interpretation, construction and application of the terms of an insurance contract where the underlying facts are undisputed, presents an issue of law.

  C.  Breach of Contract

    1. <u>Whether the Safars Materially Breached the Policy by Declining to Provide Contact Information for Novoa</u>

      a) Whether There Was a Material Breach

To advance a claim for breach of contract, a plaintiff must show that it met all terms required under the contract. Cal. Civ. Code § 1439. Under a heading titled "Section I - Conditions," the Policy imposes certain conditions on the Safars that are relevant to Allstate's request for Novoa's contact information:

 **3. What You Must Do After a Loss**

 In the event of a loss to any property that may be covered by this policy, **you** must . . .

  f) as often as **we** reasonably require: . . .

   (2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

   (3) produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person**'s power to do so . . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

Dkt. 33-10 at 9 (emphasis in original).

It is undisputed that was reasonable for Allstate to want to interview Novoa. SUF Response ¶ 24. It is undisputed that the Safars had Novoa's contact information, but declined to provide it to Allstate. Id. ¶ 25. It is undisputed that the Safars did not object to an examination of Novoa by Allstate. Id. ¶ 23. It is also undisputed that when Novoa was served with a notice of deposition in this action, Novoa did not object to being deposed. Id. ¶ 27. Given these facts, Allstate argues that it was within the Safars' power to produce Novoa for an examination under oath. It also contends that if the Safars were unable to cause Novoa to appear for an examination, the Policy required the Safars to assist Allstate in locating Novoa.

Neither argument is persuasive. Even if it were assumed that Novoa was an employee or agent of the Safars, the record does not establish that the Safars had the authority to "produce" Novoa. Thus, even an employer or principal cannot compel another person to submit to an examination under oath. That process is one that can be compelled through an appropriate judicial process. That Novoa did not object to a deposition under oath in this action does not support a claim that the Safars had the authority to compel him to appear for an examination under oath. Moreover, although the parties do not dispute that Novoa occasionally worked as a handyman for the Safars (SUF Response ¶¶ 20-21), and that Novoa was on the payroll at Younan's business (*id.* ¶ 23), there is a genuine dispute of material fact as to whether Novoa was personally employed by the Safars. *See* Dkt. 33-30 at 20 (Younan's deposition transcript, which does not clearly specify whether Novoa was an employee of his business or his personal employee); Dkt. 33-29 at 18:1-19:16.

Furthermore, the Policy only requires the Safars to "produce" third parties. The legal term "produce" refers to the providing a witness or document in response to a subpoena or discovery request. *See* Produce, Black's Law Dictionary (11th ed. 2019). This definition is more narrow that one that would require an insured to produce a person who is not a party to the insurance contract for examination. The Policy terms do not state such an obligation expressly. Moreover, even if the term "produce" in Paragraph 3(f)(3) were interpreted broadly such that it imposed a generalized obligation on the Safars to assist Allstate in locating non-parties and ensuring their cooperation with an investigation, it is undisputed that Priscilla provided Novoa's full name to Allstate on March 29, 2017. A finder of fact could reasonably conclude that by doing so, there was substantial compliance with any obligation to cooperate with Allstate's investigation.

    b)  Whether Allstate Was Prejudiced by Any Breach

Where an insurance policy requires "cooperation [by the insured] that does not involve submission to an under oath examination, California courts have required a showing that the insurer was prejudiced in its investigation by the insured's failure to cooperate." *Martinez v. Infinity Ins. Co.*, 714 F. Supp. 2d 1057, 1061-62 (2010) (citing *Brizuela v. CalFarm Ins. Co.*, 116 Cal. App 4th 578, 590 (2004)).

Even if the insurance policy required such cooperation, Allstate has not shown the absence of a triable issue of fact as to prejudice resulting from the Safars' unwillingness to provide Novoa's contact information. Allstate argues that, although it was able to depose Novoa on February 13, 2019, it was prejudiced because by that time Novoa's ability to recall material facts was limited by the amount of time that had passed since the 2017 burglary. Dkt. 33-1 at 21-22. Allstate's argument is not convincing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

Novoa's deposition transcript shows that he was unable to recall certain facts, including the names of other people with whom he worked on the dates of the alleged robbery, the locations where he spent time on those dates, and statements made by detectives to Novoa. Dkt. 33-29 at 20-25. However, without more evidence, including whether Allstate was unable to gather this information from other sources and whether Novoa would have had a better memory of these matters and would have shared that information had he been interviewed earlier, it has not been shown that there is no triable issue of fact as to prejudice.

        2.        <u>Whether Allstate Provided All Contractual Benefits to the Safars</u>

Allstate contends that there is no triable issue of fact as to whether it provided all financial benefits as required under the Policy. It focuses on three points to support this contention. *First*, Allstate argues that the Policy obligated the Safars to provide an initial estimate of the actual cash value of allegedly stolen or damaged items, but the Safars only provided replacement cost estimates to Allstate. Allstate argues that, because the Safars did not provide all of this required information, and did not make a replacement cost claim under the Policy, they are not entitled to further contractual benefits. *Second*, Allstate argues that the Safars are not entitled to further contractual benefits as to 57 items that were allegedly stolen because they were not described with the required specificity. *Third*, Allstate argues that, because the Safars did not respond to the aforementioned requests for admission, they have admitted that there was no burglary.

As noted, Allstate has not rebutted the presumption that the Safars' responses to the requests for admission were timely mailed to Allstate. Therefore, the third argument is not persuasive. The two other arguments are considered collectively in the following discussion.

        a)        Policy Provisions

As noted, a party must perform all conditions before bringing contractual claims. Cal. Civ. Code § 1439. The parties dispute whether the Safars met their obligation to provide a proof of loss to Allstate. This obligation is set out in the Policy under "Section I - Conditions":

> **3. What You Must Do After a Loss**
>
> In the event of a loss to any property that may be covered by this policy, **you** must . . .
>
>> g) within 60 days after the loss, give us a signed, sworn proof of the loss. This statement must include the following information:
>>
>>> (1) the date, time, location and cause of the loss;
>>>
>>> (2) the interest **insured persons** and others have in the property, including any encumbrances;
>>>
>>> (3) the actual cash value and amount of loss for each item damaged, destroyed or stolen . . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

Dkt. 33-10 at 9 (emphasis in original).

The Policy also includes an appraisal provision that applies if the insured and the insurer disagree on the amount of a loss:

> If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire, if the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to you and to us the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss. Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

Dkt. 33-10 at 11.

                b)      Definition of "Actual Cash Value"

The present dispute centers on whether the Safars complied with the requirement to provide a proof of loss that reflected the "actual cash value" of allegedly stolen or damaged items. The excerpts of the policy provided by the parties do not expressly state how actual cash value is to be calculated. However, both parties recognize that Cal. Ins. Code § 2051 is instructive on this issue.

Under California law, all fire insurance policies must use a standard-form contract. Cal. Ins. Code § 2071 (standard form); *id.* § 2070 (requirement for insurers to use the standard form). This standard-form contract is substantially the same as the language in the Policy. Both impose an initial burden on a policyholder-claimant to provide an actual cash value estimate, and then provide that a neutral appraisal process will be used to resolve any resulting dispute between the insured and insurer on this issue.

Section 2051 applies to "open" fire insurance policies where the "value of the subject matter is not agreed upon, but is left to be ascertained in case of loss." *Doan v. State Farm Gen. Ins. Co.*, 195 Cal. App. 4th 1082, 1093 n.7 (2011). It explains how actual cash value should be interpreted for such policies. At the time of the loss in this matter, Section 2051 provided two methods for calculating a loss:

> (1) In case of total loss to the structure, the policy limit or the fair market value of the structure, whichever is less.
> (2) In case of a partial loss to the structure, or loss to its contents, the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less. In case of a partial loss to the structure, a deduction for physical depreciation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

shall apply only to components of a structure that are normally subject to repair and replacement during the useful life of that structure.

Cal Ins. Code § 2051 (effective Jan. 1, 2005 to December 31, 2019).[5]

Because this language mirrors that in the Policy, the interpretation and meaning of Section 2051 is instructive. *Cf. Cheeks v. Cal. Fair Plan Ass'n*, 61 Cal. App. 4th 423, 426 (1998) (where loss settlement provision was "equivalent" to the provisions in the standard form fire insurance policy, parties were "bound" by interpretations of the standard form). Neither party has argued that Section 2051 does not apply, or that a different construction of this language was intended. Indeed, applying this framework would be consistent with the language in the portions of the Policy that have been submitted. For example, the Policy states that "[the actual cash value method] means that there may be a deduction for depreciation." Dkt. 33-10 at 10. This is consistent with the conditional nature of Section 2051; at that time, it provided that depreciation would only be taken into account under certain circumstances..

Section 2051 supports the view that, in these circumstances, actual cash value should be calculated using a replacement-cost-minus-depreciation method. The stolen or damaged items would qualify as a loss of contents from the insured structure. Neither of Allstate's arguments to the contrary is persuasive. *First*, Allstate argues that the first part of Section 2051(b) should control, i.e., in cases of "total loss to the structure." There is no basis presented for why this approach is warranted under the circumstances presented. *Second*, Allstate cites *Jefferson Ins. Co. v. Superior Court*, 3 Cal. 3d 398 (1970), for   the view that "actual cash value" is synonymous with "fair market value." *Id.* at 402. However, *Jefferson* has been superseded by the specific definition of "actual cash value" set forth in Section 2051. *Cal. Fair Plan Ass'n v. Garnes*, 11 Cal. App. 5th 1276, 1292-93 (2017).

      c)      Whether the Safars Met Their Initial Responsibilities as to Their Sworn Proof of Loss

As noted, Allstate argues that it paid all contractual benefits owed to the Safars. *First*, Allstate argues that the Safars never provided a sworn proof of loss with actual cash values of stolen or damaged items, and instead provided the List of stolen or damaged items with their purchase prices. Allstate argues that it acted generously in response. Thus, it claims that it estimated the actual cash values for the items on the List notwithstanding the Safars' failure to estimate cash values. It states that its calculation of an actual cash value of $317,142.57, which was based on 517 of the 574 items on the List, was appropriate and resulted in a payment of that amount to the Safars. *Second*, Allstate moves for partial summary judgment as to any claims with respect to the remaining 57 items, on the ground that the information provided by the Safars in the List was insufficient to identify any of them.

      (1)      <u>Whether the List Complied with the Condition in the Policy to Provide Actual Cash Values as to 517 of the 574 Items on the List</u>

---

[5] In 2019, Section 2051 was amended, effective January 1, 2020, to provide for replacement cost less depreciation in all circumstances, *i.e.*, for "either a total or partial loss to the [insured] structure or its contents." Cal. Ins. Code § 2051 (as amended by A.B. 188 (Cal. July 9, 2019)). This definition was not in effect at the time the Safars provided an actual cash value estimate to Allstate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

Allstate argues the Safars did not meet their initial burden to estimate actual cash values for 517 of the 574 items on the List. The Safars respond that they had a good faith belief that the purchase prices for the items on the List were reasonable estimates of the actual cash values. *See* SUF Response ¶¶ 7, 50.

If the definition of actual cash value in Section 2051 were applied, the purchase prices submitted by the Safars would have satisfied their initial burden. Further, if the Section 2051 definition did not apply, the Policy does not state with sufficient particularity that a fair market value calculation must be used.. Nor does it state that such estimates must be based on a rigorous, accepted process. Moreover, California law allows flexibility to insureds by requiring only "substantial compliance" with policy conditions. Given the evidence that the Safars believed that the purchase prices of the allegedly stolen or damaged items were acceptable estimates for their actual cash values, Allstate has not established that there is no triable issue of fact as to whether the Safars met their initial burden to estimate actual cash values for the items on the List.

Moreover, after submitting the List to Allstate, Plaintiffs sought an appraisal pursuant to the Policy. Defendant declined to agree to this demand, claiming that "[it was] not aware of a dispute as to the amount of loss for any of the personal property." Dkt. 33-29 at 10. Given that the Policy did not require the Safars to make their demand for an appraisal in any particular form, there is a genuine issue of material fact as to whether Defendant breached the Policy by declining to submit to this demand.

>    (2)    Whether Partial Summary Judgment Is Warranted as to the Remaining 57 Items on the List

Allstate claims that the List was insufficient to identify the aforementioned 57 items. It is undisputed that, although Allstate requested the Safars' assistance in identifying those items, the Safars did not provide further descriptions. SUF Response ¶ 41; *see* Dkt. 33-28 at 26-27 (listing the descriptions given by the Safars for each of the items). The Safars have not presented any evidence that they provided information to Allstate that was sufficient to identify those items.

For the foregoing reasons, there is no genuine issue of material fact as to whether the Safars provided Allstate sufficient information to identify the 57 items that were not included in the calculation of the $317,142.57 sent by Allstate to the Safars. Because an insurer cannot adjust a claim without knowing the item that is the basis for it, there is no genuine issue of material fact as to whether the Safars complied with their obligations under the Policy as to those 57 items. They did not.

For the foregoing reasons, the Motion is **GRANTED IN PART**, *i.e,* as to the Safars' claim that Allstate breached the Policy by not paying benefits due as to the 57 items.

>    D.    Negligence

"[I]n California, 'negligence is not among the theories of recovery generally available against insurers.'" *Tento Int'l, Inc. v. State Farm Fire & Cas. Co.*, 222 F.3d 660, 664 (9th Cir. 2000) (quoting *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 72 Cal. App. 4th 249, 254 (1999)) (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1166 (9th Cir. 1995); *see Everett Assocs., Inc. v. Transcontinental Ins. Co.*, 159 F. Supp. 2d 1196, 1201-04 (N.D. Cal. 2001) (evaluating and rejecting the possibility of a negligence claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

in the context of an insurer's alleged failure adequately to investigate a claim).

This cause of action alleges that Allstate was negligent in handling the Safars' claim. SUF Response ¶ 60. The Safars essentially concede that their negligence claim is not viable, and have not identified any exception to the general rule under California law that an insured party may not bring an extracontractual negligence claim against an insurer.

For the foregoing reasons, the Motion is **GRANTED IN PART**, *i.e,* as to the negligence claim.

      E.      Analysis - Breach of Implied Covenant of Good Faith and Fair Dealing

           1.      <u>Legal Standards</u>

There is an implied covenant of good faith and fair dealing in insurance contracts. *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 463 (2007); *Trishan Air*, 635 F.3d at 434. A breach of the underlying contract is not required to establish a breach of good faith and fair dealing. *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) (citing *Carma Developers Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992)).

When a party brings claims for breach of the implied covenant of good faith and fair dealing and breach of contract, if the "allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract clause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). An exception to this rule arises when the defendant allegedly acted in bad faith to impede the benefits that plaintiff was to have derived from the contract. *See, e.g.*, *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 353 n.18 (2000). Relief may be available as to such a claim even if there was no express breach of contract. *See Celador Int'l, Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852-53 (C.D. Cal. 2004) ("[T]he Court should not mechanically inquire whether the same facts are alleged and whether the same remedy is sought. Rather, the challenge brought by *Careau* and its progeny is to distinguish two claims based on the same facts. If they cannot be distinguished, then the natural conclusion is that they are duplicative. Plaintiffs have distinguished their claims here.").

The elements necessary to establish a breach of the implied covenant of good faith and fair dealing are:

> (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct.

*Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1145 (E.D. Cal. 2012) (quoting *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) and Judicial Council of California, Civil Jury Instructions § 325). The elements are evaluated uniquely in connection with a contract of insurance:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

> In the insurance context, the "primary test" of whether an insurer breaches the implied covenant of good faith and fair dealing is "whether the insurer withheld payment of an insured's claim unreasonably and in bad faith." *Love v. Fire Ins. Exch.,* 221 Cal. App. 3d 1136, 1151 (1990). "Where benefits are withheld for proper cause, there is no breach of the implied covenant." *Id.* "An insurer's bad judgment or negligence is insufficient to establish bad faith; instead, the insurer must engage in 'a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'" *Nieto v. Blue Shield of Cal. Life & Health Ins. Co.,* 181 Cal. App. 4th 60, 86 (2010) (citation omitted). Bad faith is ordinarily a question of fact. *Id.*

*Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1163 (C.D. Cal. 2010).

       2.      Application

Defendant argues that summary judgment on the implied covenant claim is warranted for three reasons. *First,* because the breach-of-contract claim fails. *Second,* to the extent the claim is based on the contention that Allstate acted in bad faith by delaying the insurance process, Allstate was justified in withholding benefits while seeking additional information from the Safars. *Third,* there was a genuine dispute as to Allstate's liability under the Policy.[6]

The first argument fails in light of the prior determination that there is a genuine issue of fact as to the breach of contract claim. As to the second argument, there is evidence that many of the delays in the claims process were the result of conduct by the Safars. However, there is competing evidence as to the cause of the delay between May 5, 2017 and June 14, 2017, while Allstate's requests for Novoa's contact information were pending. SUF Response ¶ 4, 7, 9-11, 22; *cf. Globe Indem. Co. v. Sup. Ct.*, 6 Cal. App. 4th 725, 731 (1992) (once an insurer receives adequate information from the insured party to process a claim, there is a duty to avoid unreasonable delay). As noted, the Policy did not require the Safars to cause Novoa to appear for an EUO. Whether it was reasonable for Allstate to wait until August 30, 2016 to request the Safars' EUOs also presents a basis for a factual dispute as to the cause of any overall delay in the adjustment process. *Id.* ¶ 9.

The third argument has greater force, but is not sufficient to establish the absence of a triable issue of fact as to this cause of action. In general, a breach of the covenant of good faith and fair dealing fails in the context of a dispute over insurance coverage "if the defendant demonstrates that here was 'a genuine dispute as to coverage.'" *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003). Therefore, to prevail on the Motion, Allstate must show that there is no triable issue of material fact as to whether there was a reasonable dispute as to coverage.

To support the position that there is no such triable issue Allstate contends that there were genuine disputes as to the following issues related to coverage: (i) whether the burglary was by an insider; (ii) whether the Safars met their obligations to cooperate with Allstate; and (iii) the amount of the loss. In

---

[6] Allstate also argues that the Safars failed to respond to certain requests for admission, thereby admitting that Allstate acted in good faith. The substantive basis for this argument has been rejected above.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

response to the Motion, the Safars have proffered evidence that is sufficient to show a triable issue of fact notwithstanding these arguments by Allstate. This includes evidence as to whether it was reasonable to conclude or suspect that the burglary was by an insider and whether any delay in handling the claim was caused by Allstate's requests for Novoa's contact information. Finally, if there was a genuine dispute about the amount of the loss, engaging a neutral appraisal could have been appropriate.

For the foregoing reasons, the Motion is **DENIED** as to the bad faith claim.

        3.      Punitive Damages

            a)      Legal Standards

To prevail on a punitive damages claim, a party must prove malice, oppression, or fraud. Cal. Civ. Code § 3294(a); *College Hosp., Inc. v. Sup. Ct.*, 8 Cal. 4th 704, 712 (1994); *see Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 (1994) (in the context of a dispute with an insurer, mere negligence, overzealousness, legal error, or callousness is not enough to support punitive damages). Thus, "malice," "oppression," and "fraud" have been defined as follows:

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
>
> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
>
> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3294(c).

To establish these elements requires clear and convincing evidence.

            b)      Analysis

Allstate argues that the Safars have produced no evidence of malice, oppression or fraud. The Safars make several responses: (i) Allstate referred the Safars' claim to its fraud unit without good cause; (ii) Allstate refused to accept partial inventories and receipts as proofs of loss, and unreasonably required the Safars to produce a complete list of allegedly stolen or damaged items; (iii) Allstate did not investigate the alleged burglary until after the Safars produced such a complete list; (iv) Allstate delayed payment by requesting the Novoa's EUOs; and (v) Allstate did not investigate or retain experts as to the Safars' claim until after this action was filed. SUF Response ¶ 62.

None of these purported facts are sufficient to show a triable issue of fact under the clear and convincing evidence standard as to whether Allstate acted with malice, oppression or fraud. *First*, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

contention that Allstate acted maliciously, oppressively, or fraudulently in referring the Safars' claim to its fraud unit is unsupported by any evidence. Dkt. 42-10 ¶ 22 (the Safars' argument is based on Allstate's claim processing record). The claim processing record reflects that Allstate employees referred the Safars' claim to its fraud unit due to certain issues with the Safars' previous claims, as well as the delays in reporting the alleged burglary and providing a complete proof of loss. Dkt. 42-1 at 18, 20, 22-23, 27-30 (claim processing record). No other evidence shows a triable issue as to these matters or as to whether Allstate intended to injure the Safars, acted despicably, subjected the Safars to cruel or unjust hardship, or defrauded them. Moreover, the Safars have not presented evidence of any claimed injury that was caused by the challenged conduct by Allstate.

*Second*, the Policy required the Safars to provide a "signed, sworn proof of loss" including "the actual cash value and amount of loss for each item damaged, destroyed or stolen" to Allstate. Given this language, it was reasonable for Allstate to request a complete list of allegedly stolen, lost, or damaged property. Therefore, there is not sufficient evidence to show a triable issue as to whether Allstate's demand of such a list reflected malice, oppression, or fraud.

*Third*, a reasonable finder of fact could not reasonably infer from Allstate's decision not to investigate the alleged burglary until the Safars provided a complete loss inventory, that Allstate acted maliciously, oppressively or fraudulently.

*Fourth*, the evidence would not permit a reasonable finder of fact to conclude that, if Allstate misinterpreted the Policy by insisting that the Safars provide Novoa's contact information as a condition to making a payment on the claim, this showed malice, oppression or fraud.

*Finally*, the record does not support the Safars' contention that Allstate did not investigate the alleged burglary and the Safars' losses until this action was filed. The evidence proffered by the Safars supports a contrary finding. It shows that Allstate examined the claim and communicated extensively with the Safars about it. Dkt. 42-1 at 7-45. It is undisputed that Allstate made estimates of actual cash value for items on the List, and remitted a corresponding payment to the Safars. A dispute as to the scope and amount of this payment, or as to the nature of the underlying investigation that preceded it, is not sufficient to permit a reasonable factfinder to conclude that Allstate acted with malice, oppression, or fraud. That outcome is not changed because Allstate renewed its investigation of the Safars' claim after the commencement of this action, and retained experts as part of its defense.

### IV.   Conclusion

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART** as to the negligence cause of action, the claim for punitive damages claim and those claims arising from the 57 items that were not described with sufficient specificity.

Counsel shall confer and file a Joint Trial Report no later than May 28, 2021, which shall include the parties' respective and/or collective views on the following: (i) a proposed date for the final pretrial conference and trial; (ii) the estimate for the length of the trial based on the time needed for the direct and cross examination of each planned witness; and (iii) any issues that need to be addressed prior to the commencement of trial. Attached to the joint report shall be the Schedule of Dates for Civil Jury

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-04031 JAK (PLAx) | Date | May 19, 2021 |
|---|---|---|---|
| Title | Linda Safar, et al. v. Allstate Insurance Co. | | |

Trials, found in the Standing Order on the Court's procedures and schedules located at: http://www.cacd.uscourts.gov/honorable-john-kronstadt. Dates will be set upon review of the report.

**IT IS SO ORDERED.**

                                                  :

Initials of Preparer   tj